ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NATHANIEL W. ELLIBEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 03-3023-JAR |
| ) | |
| STANTON HAZLETT, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER GRANTING DEFENDANT CHAPPAS'S MOTION FOR SUMMARY JUDGMENT

On May 15, 2006, the Court denied defendant Chappas's motion to dismiss for lack of subject matter jurisdiction (Doc. 86). In that Memorandum and Order, the Court also converted defendant's motion to dismiss and/or for summary judgment (Doc. 64) into a motion for summary judgment, as it relied upon documents outside of the Second Amended Complaint. In compliance with Fed. R. Civ. P. 12(b), the Court provided plaintiff with notice and an additional amount of time to present materials made pertinent under Fed. R. Civ. P. 56. Plaintiff has now filed an affidavit to support his allegations, so the motion is ripe for adjudication. As explained more fully below, the Court grants defendant Chappas's motion for summary judgment on plaintiff's remaining state law claims.

## I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."[1]  A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[2]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[3]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[4]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[5]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[6]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[7]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[8]  When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[9]

---

[1] Fed. R. Civ. P. 56(c).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Id.*

[4] *Id.* at 251–52.

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[7] *Id.*

[8] *Id.*

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

Furthermore, the Court must construe *pro se* pleadings liberally and apply a less stringent standard than what is applicable to attorneys.[10]  However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[11]  The Court need only accept as true plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[12]

## II. Uncontroverted Facts

This Court converted defendant's motion to dismiss and/or for summary judgment into a motion for summary judgment and allowed plaintiff an additional opportunity to present materials made pertinent by Fed. R. Civ. P. 56.  Plaintiff's response purports to comply with D. Kan. R. 56.1(b), which requires a memorandum in opposition to summary judgment to contain a section that concisely states which of the movant's statements of fact are controverted.  These statements should be numbered and correlate to the numbered paragraphs in the movant's memorandum.  The opposing party may then present a separate section setting forth any additional material facts, citing to supporting documentation.  Plaintiff fails to comply with this rule, and instead, sets forth three paragraphs that contain plaintiff's recitation of issues or arguments.

Although the Court acknowledges its duty to liberally construe plaintiff's pleadings since he proceeds *pro se*, the Court declines to conduct a fishing expedition of the record simply because plaintiff's only statement of fact appears to be his statement that he incorporates his

---

[10]*Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[11]*Whitney*, 113 F.3d at 1173.

[12]*E.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Second Amended Complaint as part of his response. Moreover, this plaintiff is not the typical *pro se* litigant. Plaintiff has filed eight cases in federal court over the last four years, and instituted or responded to a number of summary judgment motions.[13] In fact, he deems himself well-versed in the law and the rules of procedure. Despite the Court's liberal pleading requirement for *pro se* litigants, the Tenth Circuit "'has repeatedly insisted that *pro se* parties follow the same rules of procedure that govern other litigants.'"[14] Because plaintiff fails at any point to specifically identify facts that he deems controverted or to support such contravention with specified supporting documents, the Court deems defendant's statement of facts uncontroverted.[15]

The uncontroverted facts in this matter are primarily established by a series of correspondence between plaintiff and defendant Chappas. Plaintiff contacted defendant in 2000 for advice on potential grounds for a habeas corpus petition under K.S.A. § 60-1507. On September 6, 2000, plaintiff wrote a letter to defendant, attempting to identify issues he wished to pursue through the courts, in particular, ineffective assistance of plaintiff's trial and appellate counsel, co-defendant Lloyd Graham. The letter states, in part:

> I believe that I have located numerous court rulings

---

[13]*Ellibee v. Posey*, Case No. 02-3233-JAR (filed Aug. 1, 2002; closed Apr. 27, 2006); *Ellibee v. Simmons*, Case No. 03-3194-JWL-JPO (filed April 24, 2003; closed Aug. 4, 2005 pending appeal); *Ellibee v. Roberts*, Case No. 03-3405-SAC (habeas petition filed Oct. 16, 2003; closed Dec. 3, 2003); *Ellibee v. Fox*, Case No. 03-3463-JAR-KGS (filed Dec. 5, 2003; closed Sept. 28, 2006); *Ellibee v. Marlett*, Case No. 04-3059-JPO (filed Feb. 17, 2004; closed Jan. 10, 2006 after jury trial); *Ellibee v. Higgins*, Case No. 04-3402-CM-DJW (filed Nov. 4, 2004; closed July 31, 2006); *Ellibee v. Sebelius*, Case No. 04-3403-JAR-JPO (filed Nov. 4, 2004; closed Dec. 22, 2005).

[14]*Garrett v. Selby Connor Maddux & Janer*, 425 F.3d at 840 (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[15]Even though the Court did not formally provide notice to plaintiff that it would consider the motion under Rule 56 until it's May order, plaintiff was on notice that the motion was a motion to dismiss or in the alternative, a motion for summary judgment given the fact that the title of the motion indicates as much, and the defendant relied on documentation outside the pleadings for support.

>that will support an ineffective assistance of counsel claim, based upon, and proven by, the numerous pretrial errors.
>
>I greatly appreciate your time and consideration of my issues. I will be looking forward to hearing from you.

In response, defendant wrote on September 7, 2000: "Thank you for your recent correspondence and enclosures. I have reviewed same. For me to proceed further in your case, I will require a retainer of $2,000.00 which will be worked at my hourly rate of $125.00." On September 14, 2000, plaintiff responded and acknowledged receipt of defendant's letter of September 7, 2000. In the letter, plaintiff inquired, "Will the retainer fee you quoted cover all foreseeable expenses, or will there be additional expenses?" Defendant responded on September 19, 2000: "The quoted retainer will be for investigation, preparation and the filing of a Habeas Corpus motion if applicable. If monies in addition to the $2000.00 are required, we will discuss that ahead of time and you will have ample opportunity to provide additional monies for your case if required." On September 23, 2000, Ellibee forwarded a check for $2000 for the retainer fee.

On December 11, 2000, defendant wrote plaintiff advising that he had completed reviewing plaintiff's case material and that although he had reservations about the manner in which plaintiff's defense was conducted by Mr. Graham, there was nothing in defendant's opinion that would rise to the level of ineffectiveness required to obtain relief. Defendant further opined, "Hopefully there may be some avenue in the system where we can obtain some degree of relief concerning your sentence." This December 11, 2000 letter to plaintiff prompted a thirteen page response dated December 16, 2000, in which plaintiff provided significant personal

background information as well as numerous case citations that he believed would support his various legal contentions.

On February 23, 2001, defendant forwarded to plaintiff a copy of the criminal case file he obtained from Mr. Graham. Plaintiff wrote defendant on February 27, 2001, acknowledging receipt of the file and made additional requests for hearing transcripts, military case files, and the district attorney's case file.

On June 8, 2001 plaintiff wrote defendant and stated, "I am terminating your representation. Please send the entire $2000 retainer that I sent to you on or about September 29, 2000 to the following address, made payable to Nathaniel W. Ellibee. . . . [I]t is my reasonable belief that the interest that you have received on [the $2000 retainer] should more than adiquatly [sic] compinsate [sic] you for your correspondence and costs of postage." On June 12, 2001 defendant wrote plaintiff advising that he would visit with him on June 22, 2001.

At some point in late June 2001, defendant explained to plaintiff that the $2000 retainer fee was essentially exhausted. In a letter dated June 27, 2001, plaintiff explained that he was having difficulty with prison administration transferring an additional $1000 to defendant and sent defendant a form to make defendant his Durable Power of Attorney so that defendant could exercise control over plaintiff's funds. Defendant declined to accept the Durable Power of Attorney, but did ultimately receive an additional $1000 sum that plaintiff acknowledged to be for additional "fees and expenses." The next correspondence in the record is an August 8, 2001 letter from plaintiff, forwarding a check to defendant for $1000.

On August 20, 2001, defendant responded by letter to an inquiry by plaintiff regarding a matter involving Lynn Cain and his former attorney, Lloyd Graham. Mr. Graham had secured a

judgment against Cain on plaintiff's behalf in small claims court in 1994. Defendant informed plaintiff that the Cain judgment had become dormant and that to revive the matter, "Ms. Cain would have to be located and served and, as I understand it, Mr. Graham could not locate her." Defendant further noted in this letter arguments that he believed had potential for post-conviction relief. Defendant also asked plaintiff if he would be available to visit with him on August 30 or August 31.     Plaintiff responded with a five-page letter to defendant dated August 24, 2001, directing defendant Chappas to make Lloyd Graham "be held accountable for his actions." Defendant met with plaintiff at the El Dorado Correctional Facility on August 30, 2001. During this meeting, defendant advised plaintiff to express responsibility and remorse before an upcoming parole board hearing. Plaintiff declined to follow this advice and on September 14, 2001, plaintiff wrote to defendant, stating:

> I have made a decision and choosen [sic] a course of action in regards to my pursute [sic] of a writ of Habeas Corpus. I have filed the petition, brief in support, and supporting documents in the Geary County District Court.
>
> I do not believe that preparation for a parole hearing is more important than my pursute [sic] of a Habeas Corpus. I am not just simply trying to get out of prison, I am seeking justice. . . . [H]ow can you support me going to a parole board and giving a false statement accepting responsibility and showing remorse for a crime that I did not commit?
>
> I am also concerned after our meeting on the morning of August 30th. I had already identified and completed the research on the issues you suggested to the best of my ability.
> . . .
>
> Despite 18 letters, 1 phone call, and 2 in-person visits from you, the actual return; the recognized work product that I received from you, consists of:
> (1.) (1) copy of Lloyd R. Graham's personal client file. (That was provided willingly and without charge by Mr. Graham.)

7

> (2.) Information regarding the status of the Cain suit.  (By making
> a phone call to the court clerk.)
> (3.)  (2) small cups of coffee
> . . .
>
> You have solicited case/ statutory cites from me, to include
> legal research anylysis [sic] of them.  But you have not provided
> any legal memorandums [sic] to me, only some generalized
> personal opinions.
> . . .
>
> It is my position and belief that the majority of the retainer that I
> have provided to you; $3,015.00, should be returned to me.

On October 17, 2001, defendant forwarded to plaintiff a three-page statement for services rendered.  That statement includes an itemization of defendant's time spent on plaintiff's case, totaling 34.8 hours in addition to mileage and postage.  At $125 per hour, plaintiff's bill was for $1479.45, over and above the $3015 retainer already paid.

After terminating defendant as his attorney, plaintiff retained the services of Autumn L. Fox to research and pursue his habeas petition.  Plaintiff was charged $9750 in attorneys fees by Fox, who prepared and filed a habeas motion on plaintiff's behalf.

**III.  Discussion**

This case has a long and protracted procedural history.  The district court initially dismissed plaintiff's entire Amended Complaint in 2004; the Tenth Circuit Court of Appeals affirmed the district court's order dismissing all federal claims, but reversed and remanded the part of the order dismissing state-law claims against defendants Orr, Chappas, and Graham.  On remand, this Court dismissed plaintiff's state law claims against defendant Orr, but determined that the state law claims against defendants Chappas and Graham should not be dismissed.  In the Second Amended Complaint, plaintiff asserts that he suffered damages due to defendant's

"breach of contract, malpractice, breach of duty owed, fraud, negligence, wantonness, deceptive and unconscionable acts, misfeasance, breach of oath and failure to afford a reasonable standard of care and representation that is common knowledge."  Plaintiff seeks: (1) a declaratory judgment that defendant breached their contract, that his conduct constituted fraud, that defendant was negligent and that he violated a duty of care owed to plaintiff, and that his actions constitute negligence; (2) injunctive relief in the form of disciplinary proceedings under D. Kan. R. 83.5.1 for purposes of disbarment; and (3) money damages, including punitive damages.

Under Kansas law, legal malpractice generally constitutes both a tort and a breach of contract.[16]  "Where the malpractice involves failure to perform a contractual obligation, whether express or implied, the cause of action is in contract."[17]  But when "the gravamen of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort."[18]  Liberally construing plaintiff's Second Amended Complaint, he makes various claims of legal malpractice against defendant, but asserts causes of action in both tort and contract, as well as fraud.  The Court will evaluate plaintiff's allegations under these claims.

### A. Tort Claims: Negligence, Legal Malpractice

In order to prevail on a legal malpractice claim, plaintiff must show (1) the duty of the attorney to exercise ordinary skill and knowledge, (2) a breach of that duty, (3) a causal

---

[16]*See, e.g.*, *Turner & Boisseau v. Nationwide Mutual Ins. Co.*, 989 F. Supp. 1359, 1362 (D. Kan. 1997).

[17]*Pittman v. McDowell, Rice & Smith, Chartered*, 752 P.2d 711, 718 (Kan. Ct. App. 1988) (internal citations omitted).

[18]*Id.*

9

connection between the breach of duty and the resulting injury, and (4) actual loss or damage.[19] In addition, "to prove legal malpractice in the handling of litigation, a plaintiff must establish the validity of the underlying claim by showing that it would have resulted in a favorable judgment in the underlying lawsuit had it not been for the attorney's error."[20] This requires plaintiff to prove three additional elements: (1) the underlying claim is valid, (2) he would have received a favorable judgment but for the attorney's error, and (3) the judgment was "collectible."[21]

"'[C]laims of legal malpractice, like other forms of malpractice, are normally to be determined by the trier of fact rather than by summary judgment.'"[22] There is a recognized exception to this rule, however, when under the totality of the circumstances, as shown by the uncontroverted facts, "a conclusion may be reached as a matter of law that negligence has not been established."[23] The Court finds that, as a matter of law, plaintiff is unable to establish a claim for negligence or malpractice based on the uncontroverted facts in this matter.

First, the Court finds that plaintiff is unable to establish a genuine issue of material fact about whether defendant breached a duty of care owed to plaintiff. Liberally construing plaintiff's Second Amended Complaint and his subsequent pleadings, he claims that defendant failed to act in plaintiff's "best interests for the express purpose of investigating, preparing, filing and representing a K.S.A 60-1507 Petition." Specifically, plaintiff alleges that a duty was

---

[19]*Bergstrom v. Noah*, 974 P.2d 531, 553 (Kan. 1999) (quoting *Hunt v. Dresie*, 740 P.2d 1046 (1987)).

[20]*Canaan v. Bartee*, 72 P.3d 911, 915 (Kan. 2003), *cert. denied*, 540 U.S. 1090 (2003); *Webb v. Pomeroy*, 655 P.2d 465, 467–68 (Kan. Ct. App. 1982).

[21]*Webb*, 655 P.2d at 468 (citing Meisleman, Attorney Malpractice: Law and Procedure § 3:5 at 44 (1980)); *see also Augustine v. Adams*, No. 95-2489-GTV, 1997 WL 298451, at *4  (D. Kan. May 2, 1997).

[22]*Bergstrom*, 974 P.2d at 554.

[23]*Id.*; *see also Ybarra v. Swanson*, No. 02-1368-WEB, 2003 WL 21939022, at *2  (D. Kan. July 21, 2003).

breached because defendant failed to: (1) conduct legal research; (2) contact or interview witnesses plaintiff had identified; (3) obtain documents plaintiff had identified; (4) interview plaintiff's trial counsel; (4) investigate an ineffective assistance of counsel claim; (5) retain an expert witness; (5) provide plaintiff with a memorandum of law concerning legal issues plaintiff had raised; and (6) return the $3000 retainer to plaintiff.

There is no dispute that plaintiff retained defendant to represent his interests in the state habeas matter. "The duty created by this relationship is fiduciary in character. Such a relationship binds the attorney the highest degree of fidelity and good faith to his client on account of the trust and confidence imposed."[24] Defendant had a duty to "properly, competently, and adequately counsel, advise, and represent" plaintiff.[25]

Even though a violation of the Kansas Rules of Professional Conduct[26] does not provide an independent basis for a legal malpractice action, defendant's conduct was clearly within the bounds set forth under those standards. Rule 1.2 sets forth the scope of an attorney's representation. Rule 1.2 requires the lawyer to abide by the client's decisions concerning the objectives of representation, with certain exceptions, and requires the attorney to consult with the client regarding the means that the lawyer chooses to pursue.[27] The comment to Rule 1.2 explains the distinction between the objectives and the means of representation:

> The client has ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law

---

[24]*Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 978 P.2d 922, 931 (Kan. 1999).

[25]*Phillips v. Carson*, 731 P.2d 820, 833 (Kan. 1987).

[26]The Kansas Model Rules of Professional Conduct are contained in Kansas Supreme Court Rule 226 [hereinafter KAN. MODEL R. PROF. CONDUCT X.X (1988)].

[27] KAN. MODEL R. PROF. CONDUCT 1.2 (1988).

> and the lawyer's professional obligations.  Within those limits, a
> client also has a right to consult with the lawyer about the means to
> be used in pursuing those objectives.  At the same time, a lawyer is
> not required to pursue objectives or employ means simply because
> a client may wish that the lawyer do so.  A clear distinction
> between objectives and means sometimes cannot be drawn, and in
> many cases the client-lawyer relationship partakes of a joint
> undertaking.  In questions of means, the lawyer should assume
> responsibility for technical and legal tactical issues, but should
> defer to the client regarding such questions as the expense to be
> incurred and concern for third persons who might be adversely
> affected.[28]

Plaintiff presents no authority or argument about why defendant's conduct, even construed in the light most favorable to plaintiff, rises to a breach of duty of good faith and fidelity.  Plaintiff construes an attorney's duty as requiring the attorney to essentially follow his directives about not only the objectives, but the means of representation.  This is not an accurate interpretation of the nature of the attorney-client relationship.  All of plaintiff's complaints in this case concern the *means* of representation—technical legal and tactical issues.  Despite plaintiff's paralegal education, the Court presumes that he retained defendant's services for a reason: legal advice and counsel.  Defendant had no duty under the applicable rules to provide plaintiff with memoranda of law, investigate witnesses or claims if he did not think it necessary, or conduct legal research on issues that he did not believe that in his experience would be meritorious.  This Court finds as a matter of law that defendant had no duty as plaintiff's attorney to blindly follow plaintiff's directives concerning technical legal or tactical issues.

Moreover, plaintiff can provide no authority for his claims that defendant was required to return his retainer fee.  A lawyer's fee need only be reasonable.[29]  Here, defendant clearly set

---

[28] R. 1.2 cmt.

[29] *See* R. 1.5.

forth in writing his fee promptly after plaintiff retained him in a letter dated September 7, 2000. He explained to plaintiff in writing that he would require a $2000 retainer and that he charged $125 per hour. Plaintiff was first billed on October 5, 2000, and was last billed on September 26, 2001—just short of one year later. A good deal of the charges on the bill statement is time defendant spent reviewing and responding to plaintiff's correspondence, or visiting plaintiff.[30] The Court has reviewed these billing statements and finds that there is no genuine issue of material fact that would lead a reasonable factfinder to conclude that defendant's fee was not reasonable. In fact, it is unreasonable for plaintiff to retain defendant's services for a period of one year for no fee. Additionally, the undisputed facts show that plaintiff advanced an additional $1000 retainer after the first $2000 was expended. It is clear from the facts that plaintiff fully understood the fee arrangement and should have not had any expectation that his retainer would be returned to him, given the time defendant had spent working on his case. Plaintiff fails to show a genuine issue of material fact over whether defendant owed him a duty to return his retainer fee.

Second, the Court finds that plaintiff is unable to prove that the underlying claim would have been successful had defendant followed his directives in the habeas matter. Plaintiff fails to allege this essential element in the Second Amended Complaint and this Court has already resolved this issue in a lengthy Memorandum and Order in *Ellibee v. Fox*, Case no. 03-3463-JAR. There, the Court found plaintiff was unable to establish that his own arguments advanced in his habeas petition, but waived by Attorney Fox were valid, or would have been successful. Because plaintiff fails to show a genuine issue of material fact over whether his claim would

---

[30]As plaintiff acknowledged in his September 14, 2001 letter, defendant composed eighteen letters to him, made one phone call and visited him twice—all of which constitutes billable time.

have succeeded but for defendant's alleged negligence, summary judgment is also appropriate on this ground.

### B. Breach of Contract

In order to establish a breach of contract, plaintiff must prove: (1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff was damaged by the breach.[31]  Plaintiff alleges that he was forced to hire another attorney to perform the contract that defendant was supposed to perform, and the fact that defendant did not "produce any work product" constitutes a breach of the contract.  In order survive summary judgment, plaintiff must come forward with evidence that could show defendant breached the contract that established an attorney-client relationship between the two.  The undisputed facts would not create a genuine issue of material fact over this essential element.  The correspondence between the parties establishes that plaintiff terminated defendant's services because he disagreed with his advice and strategical choices.  There is no evidence in the record of defendant's breach, only his disagreement with plaintiff over legal strategy.  Moreover, the undisputed facts do not reflect that plaintiff was willing to perform in compliance with the contract given his refusal to pay defendant for services rendered during the almost-year that he represented him.  As a result, summary judgment is appropriate on this claim.

### C. Fraud

To show fraud, plaintiff must show: (1) an untrue statement of fact; (2) known to be

---

[31]*E.g.*, *Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc.*, 265 F. Supp. 2d 1179, 1187 (D. Kan. 2003).

untrue by the party making it; (3) made with the intent to deceive or with reckless disregard for the truth; (4) upon which another party justifiably relies; and (5) acts to his detriment.[32]  Fraud is never presumed and must be established by clear and convincing evidence.[33]  Plaintiff has come forward with no evidence to support that defendant knowingly made an untrue statement of material fact.  Plaintiff was charged exactly in the amount and manner that was set forth in the engagement letter drafted by defendant.  Plaintiff's constant need to interject his legal opinions into the matter led to the great majority of time spent on his case by defendant, and the Court sees no reason why plaintiff should be exempt from paying for this time spent.

There is no evidence of any untrue statement of material fact that would lead a reasonable factfinder to find for plaintiff.  At no time did defendant misrepresent his fee, nor is there evidence that he misrepresented the time spent on plaintiff's case.  As set forth above, the undisputed facts show that defendant's fee was reasonable.

Plaintiff emphasizes that the Court has already found jurisdiction and that he is able to state a claim under 28 U.S.C. § 1915A.  But this is hardly dispositive.  In it's Order addressing the Tenth Circuit's remand order, this Court merely held that the exoneration rule, which requires a person convicted of a criminal action to obtain post conviction relief before maintaining an action alleging malpractice against his attorney, did not apply to plaintiff's claims against defendants Chappas and Graham.  In its Order addressing the subject matter jurisdiction issue, the Court found that plaintiff had alleged enough facts to establish the amount in controversy required for diversity jurisdiction.  As the Court explained in that Order, the

---

[32]*E.g.*, *Alires v. McGehee*, 85 P.3d 1191, 1195 (Kan. 2004); *Crandall v. Grbic*, 138 P.3d 365, 375 (Kan. Ct. App. 2006).

[33]*Crandall*, 138 P.3d at 375 (quoting *Alires*, 85 P.3d at 1195).

standard for this argument is extremely high and the Court was not convinced to a "legal certainty" that plaintiff had alleged damages in bad faith. Here, the standard is entirely different. Under the applicable standard for summary judgment, the Court finds plaintiff is unable to come forward with evidence to establish a genuine issue of fact about an essential element of any of plaintiff's claims.

A motion for reconsideration under D. Kan. R. 7.3 is not encouraged. The standards for these motions are well-established and are only appropriate when the Court has clearly misapprehended a party's position or fact or applicable law, or when new evidence is obtained that could not have been previously obtained through the exercise of reasonable diligence. Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[34] Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the Tenth Circuit for motions for reconsideration. Likewise, any response necessitated by a motion for reconsideration is limited to three pages. No reply may be filed.

**IT IS THEREFORE ORDERED BY THE COURT THAT**: defendant Chappas's Motion for Summary Judgment (Doc. 64) is **granted**.

**IT IS SO ORDERED**.

Dated this 23rd day of October 2006.

                                                               S/   Julie A. Robinson
                                                             Julie A. Robinson
                                                             United States District Judge

---

[34]*Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir. 1996), *cert. denied sub. nom. Miller v. Brown*, 520 U.S. 1181 (1997).