ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NATHANIEL W. ELLIBEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 03-3023-JAR |
| ) | |
| STANTON HAZLETT, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER GRANTING DEFENDANT GRAHAM'S MOTION FOR SUMMARY JUDGMENT

On May 15, 2006, the Court denied defendant Lloyd Graham's motion to dismiss for lack of subject matter jurisdiction (Doc. 86). In that Memorandum and Order, the Court also converted defendant's motion to dismiss for failure to state a claim upon which relief may be granted into a motion for summary judgment, as it relied upon documents outside of the Second Amended Complaint. In compliance with Fed. R. Civ. P. 12(b), the Court provided plaintiff with notice and an additional amount of time to present materials made pertinent under Fed. R. Civ. P. 56. Plaintiff has now filed an affidavit to support his allegations, so the motion is ripe for adjudication. As explained more fully below, the Court grants defendant's motion for summary judgment.

## I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."[1]  A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[2]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[3]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[4]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[5]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[6]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[7]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[8]  When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[9]

---

[1] Fed. R. Civ. P. 56(c).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Id.*

[4] *Id.* at 251–52.

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[7] *Id.*

[8] *Id.*

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

Furthermore, the Court must construe *pro se* pleadings liberally and apply a less stringent standard than what is applicable to attorneys.[10] However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[11] The Court need only accept as true plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[12]

## II. Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or construed in the light most favorable to plaintiff, as the non-moving party. Plaintiff, a prisoner at the El Dorado Correctional Facility since 1992, retained defendant's services in 1993 to enforce collection of a $1540 debt owed to plaintiff by Lynn Cain. On March 17, 1993, defendant advised plaintiff in writing that he could handle his case "on a twenty-five percent (25%) contingency." Defendant soon after sent a demand letter to Cain for $1540, as well as some of plaintiff's personal property. On June 14, 1993, defendant forwarded to plaintiff a draft of a Settlement Agreement with Cain that plaintiff ultimately signed. Between October 1993 and January 1994, Cain made three payments of $100 to plaintiff, of which $25 went to defendant for his contingent fee for each payment.

On January 14, 1994, a Petition was filed on plaintiff's behalf in Geary County, Kansas against Cain, seeking judgment of $1240 plus interest. Service of process was obtained, but Cain did not appear at a scheduled February 15, 1994 proceeding and a Journal Entry of

---

[10]*Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[11]*Whitney*, 113 F.3d at 1173.

[12]*E.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

3

Judgment was entered against Cain on February 18, 1994.

On July 27, 1994, plaintiff wrote a letter to defendant, asking whether he had located Cain. Defendant responded on August 25, 1994 and told plaintiff that he had been unable to locate Cain and that "she had apparently skipped town without a trace." He also stated, "*I cannot attach any of her property until I get a court judgment against her and I can't do that until I find her.*"

In 2000, plaintiff retained the services of co-defendant James Chappas in another matter. In a December 25, 2000 letter, plaintiff asked Chappas about pursuing the Cain judgment. Chappas replied by letter on January 6, 2001: "Concerning the Cains, any judgment that you may have obtained against them could have become dormant. I will call up the clerk and ascertain the status of that lawsuit. If the Cains are no where to be found, this may be a matter not worth diverting your funds to pursue." On August 20, 2001, Chappas wrote plaintiff advising that the judgment against Cain became dormant in February 1999 and was extinguished in February 2001.

**III. Discussion**

This case has a long and protracted procedural history. The district court initially dismissed plaintiff's entire Amended Complaint in 2004; the Tenth Circuit Court of Appeals affirmed the district court's order dismissing all federal claims, but reversed and remanded the part of the order dismissing state-law claims against defendants David Orr, James Chappas, and Graham. On remand, this Court dismissed plaintiff's state law claims against defendant Orr, but determined that the state law claims against defendants Chappas and Graham should not be dismissed under the exoneration rule. In the Second Amended Complaint, plaintiff asserts that

he suffered damages due to defendant's "breach of contract, malpractice, breach of duty owed, fraud, negligence, wantonness, deceptive and unconscionable acts, misfeasance, breach of oath and failure to afford a reasonable standard of care and representation that is common knowledge."  Plaintiff seeks: (1) a declaratory judgment that defendant breached their contract, that his conduct constituted fraud, that defendant was negligent and that he violated a duty of care owed to plaintiff, and that his actions constitute negligence or malpractice; (2) injunctive relief in the form of disciplinary proceedings under D. Kan. R. 83.5.1 for purposes of disbarment; and (3) money damages, including punitive damages.  Defendant Graham moves for summary judgment, arguing that plaintiff's case was filed outside the applicable statute of limitations and that he fails to show a genuine issue of material fact on his claims.

### A.  *Statute of Limitations*

#### 1.  **Negligence/Malpractice Claims**

Under Kansas law, legal malpractice generally constitutes both a tort and a breach of contract.[13]  Plaintiff states that his malpractice claims sound in both tort and contract in the Second Amended Complaint.  "Where the malpractice involves failure to perform a contractual obligation, whether express or implied, the cause of action is in contract."[14]  But when "the gravamen of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort."[15]  Actions for negligence are governed by a two-year statute of limitations found in K.S.A. § 60-513.  Actions for breach of an

---

[13] *See, e.g.*, *Turner & Boisseau v. Nationwide Mutual Ins. Co.*, 989 F. Supp. 1359, 1362 (D. Kan. 1997).

[14] *Pittman v. McDowell, Rice & Smith, Chartered*, 752 P.2d 711, 718 (Kan. Ct. App. 1988) (internal citations omitted).

[15] *Id.*

implied contract are governed by a three-year statute[16] and actions for breach of a written contract are governed by a five-year statute.[17]

The Kansas Supreme Court has explained the difference between malpractice claims in tort and contract as follows:

> An action for liability of an attorney on the grounds of negligence for failure to discharge his professional duty to a client rests on the employment contract and therefore is contractual in nature. Where the act complained of is a breach of specific terms of the contract without any reference to the legal duties imposed by law upon the relationship created thereby, the action is contractual. Where the essential claim of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort.[18]

In his Second Amended Complaint, plaintiff asserts that his negligence/malpractice claims against defendant are based on the fact that "[he] never advised the Plaintiff that he was in any manner withdrawing his representation of the Plaintiff's interests" in the Cain matter and that he was injured because he could not pursue collection activities against Cain. Plaintiff's claims clearly sound in tort only and are governed by a two-year statute of limitations. He maintains that defendant breached a duty to him, independent of any contract, to be diligent, competent, and to communicate surrounding the underlying Cain matter. Plaintiff does not allege defendant breached a contract to achieve a specific result. Therefore, the Court applies the two-year statute of limitations applicable to tort actions.

Next, the Court must determine when plaintiff's claims accrued. Section 60-513

---

[16] K.S.A. § 60-512.

[17] § 60-511.

[18] *Kan. Pub. Employees Retirement Sys. v. Reimer & Koger Assocs., Inc.*, 936 P.2d 714, 718 (Kan.. 1997) (quoting *Pancake House, Inc. v. Redmond*, 716 P.2d 575, 578 (Kan. 1986)).

provides that a cause of action accrues when "the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party."[19]  "'Substantial injury' means an injury for which a legal action lies. . . .  It is knowledge of the fact of an actionable injury, not the extent, which triggers the statute of limitations."[20]

There are four possible theories that the Court may apply to determine the accrual date for a legal malpractice claim: (1) the occurrence rule; (2) the damage rule; (3) the discovery rule; and (4) the continuous representation rule.[21]  Under the occurrence rule, the statute of limitations begins to run from the date of the negligent act.[22]  Under the damage rule, the cause of action accrues when the negligent representation causes a legally cognizable injury to the client.[23]  Under the discovery rule, the statute begins to run when the client discovers, or reasonably should have discovered, the material facts essential to his cause of action.[24]  Finally, under the continuous representation rule, the statute of limitations does not begin to run until the attorney-client relationship is terminated.[25]  Here, defendant urges the Court that under any of these theories, the statute of limitations has run.  Plaintiff argues that the Court should apply either the

---

[19] K.S.A. § 60-513(b).

[20] *Moss v. Mamalis*, 138 P.3d 380, 384 (Kan. 2006).

[21] *Id.*

[22] *Id.*; *Pancake House*, 716 P.2d at 579.

[23] *Moss*, 138 P.3d at 384; *Pancake House*, 716 P.2d at 579.

[24] *See, e.g.*, *Dearborn Animal Clinic, P.A. v. Wilson*, 806 P.2d 997, 1002 (Kan. 1991).

[25] *Id.*

7

discovery rule or the continuous representation rule and find that his case was filed within the applicable statute of limitations.

The Court finds that under the facts and circumstances of this case, plaintiff's cause of action did not accrue until he reasonably should have discovered the material facts essential to his cause of action. "An injury is reasonably ascertainable when the plaintiff knew or could reasonably have been expected to know of the alleged negligence."[26] The Court finds that plaintiff should have reasonably been expected to know of defendant's alleged negligence at least by January 6, 2001, when Chappas wrote him: "Concerning the Cains, any judgment that you may have obtained against them could have become dormant. I will call up the clerk and ascertain the status of that lawsuit. If the Cains are no where to be found, this may be a matter not worth diverting your funds to pursue." Plaintiff did not file his suit until January 14, 2003, over two years later, and it is therefore barred by the statute of limitations.

Plaintiff maintains that the earliest he could have discovered the negligence was when Chappas informed him in August 2001 that the judgment had gone dormant. The Court disagrees and finds plaintiff should have reasonably been expected to know of the negligence at least on January 6, 2001. Plaintiff had not been paid any of the settlement money for seven years at that point, and there is no evidence that he made any attempt to contact defendant the reason why. Even if he had no way of knowing about the dormancy, Chappas' letter put him on notice that this was a very real possibility. Likewise, the continuous representation rule is inapplicable. Although defendant did not formally withdraw from the case, there is no evidence that he had functionally been plaintiff's attorney after 1994 in the Cain matter. Moreover, even though

---

[26] *Knight v. Myers*, 748 P.2d 896, 901 (Kan. Ct. App. 1988) (citing *Hecht v. First Nat'l Bank & Trust Co.*, 490 P.2d 649 (Kan. 1971)).

plaintiff never formally terminated his relationship with defendant, when the client hires another attorney and "assumes an adversarial stance" to the first attorney, the continuous representation terminates, "even if the client does not formally fire the first attorney."[27] Here, plaintiff consulted a different attorney by December 2000, and his December 25, 2000 letter clearly assumed an adversarial stance against defendant Graham. Therefore, the continuous representation terminated and did not serve to toll the statute of limitations.

### 2. Fraud Claim

Plaintiff asserts a claim of fraud, which is also subject to a two-year statute of limitations. Plaintiff's fraud allegation is based on defendant's statement in his August 25, 1994 letter that he could not attach Cain's property "until I get Court Judgment against her and I can't do that until I find her." Plaintiff alleges that defendant made this statement despite knowing it to be false, as there had been a default judgment entered against Cain in February 1994. Plaintiff alleges that he relied upon this letter and presumed that a judgment could not be entered against Cain until she was located. Plaintiff then "made the presumption that my action against Mrs. Cain was a lost cause do [sic] to an inability to locate her."

Under K.S.A. § 60-513(a)(3), a cause of action for fraud accrues when the fraud is discovered. Here, plaintiff's claim would have accrued when he discovered that defendant's statement was false. "Under Kansas law, a fraud is discovered at the time of actual discovery or when, with reasonable diligence, the fraud could have been discovered."[28] Fraud is discoverable

---

[27]*Gansert v. Corder*, 980 P.2d 1032, 1035 (Kan. Ct. App. 1999) (quoting *Morrison v. Watkins*, 889 P.2d 140, 148 (Kan. Ct. App. 1995)).

[28]*Waite v. Adler*, 716 P.2d 524, 527 (Kan. 1986).

when plaintiff was aware of enough facts that "a reasonably prudent person would investigate."[29] The record conflicts with plaintiff's present account of his knowledge at that time. Construing the facts in the light most favorable to plaintiff, he was aware in 1994 that Cain had left town and that defendant could not find her. Plaintiff was also aware, according to his December 25, 2000 letter to Chappas, that there was a hearing calendared, but that he "never heard from defendant again." The Court finds it clear that a reasonably prudent person would have investigated the Cain matter in the six year period of time between when plaintiff last heard from defendant and when he contacted Chappas. Because plaintiff's claim accrued at least by December 25, 2000, his fraud claims in this case were not filed within the applicable two-year statute of limitations.

### B. *Substantive Claims*

Out of an abundance of caution, the Court proceeds to find that summary judgment is appropriate on the merits of plaintiff's claims, even if the statute of limitations did not run.

**1. Tort Claims**

As the Court already found, plaintiff's malpractice claims sound in tort. In order to prevail on a legal malpractice claim, plaintiff must show: (1) the duty of the attorney to exercise ordinary skill and knowledge; (2) a breach of that duty, (3) a causal connection between the breach of duty and the resulting injury; and (4) actual loss or damage.[30] In addition, "to prove legal malpractice in the handling of litigation, a plaintiff must establish the validity of the underlying claim by showing that it would have resulted in a favorable judgment in the

---

[29]*Granite Mgmt. Corp. v. Gaar*, 151 F. Supp. 2d 1302, 1306 (D. Kan. 2001).

[30]*Bergstrom v. Noah*, 974 P.2d 531, 553 (Kan. 1999) (quoting *Hunt v. Dresie*, 740 P.2d 1046 (1987)).

underlying lawsuit had it not been for the attorney's error."[31]  This requires plaintiff to prove three additional elements: (1) the underlying claim is valid; (2) he would have received a favorable judgment but for the attorney's error; and (3) the judgment was "collectible."[32]

Plaintiff comes forward with no evidence that the alleged breach caused plaintiff's injury. There is no evidence in the record to show that but for defendant's alleged breach, plaintiff could have recovered the settlement money from Cain.  Defendant notably points out that he would have no financial incentive to abandon this claim if Cain could indeed be located, as he received 25% of any settlement amount paid to plaintiff under the contingent-fee agreement.  Likewise, there is no evidence in the record outside of plaintiff's conclusory allegations that the underlying claim was valid and that plaintiff would have received a favorable judgment but for defendant's error.  Even if plaintiff's malpractice and negligence claims were filed within the statute of limitations, plaintiff fails to come forward with evidence that would create a genuine issue of material fact over these claims that would allow a reasonable factfinder to find in his favor.

**2.  Fraud Claim**

To show fraud, plaintiff must show: (1) an untrue statement of fact; (2) known to be untrue by the party making it; (3) made with the intent to deceive or with reckless disregard for the truth; (4) upon which another party justifiably relies; and (5) acts to his detriment.[33]  Fraud is

---

[31]*Canaan v. Bartee*, 72 P.3d 911, 915 (Kan. 2003), *cert. denied*, 540 U.S. 1090 (2003); *Webb v. Pomeroy*, 655 P.2d 465, 467–68 (Kan. Ct. App. 1982).

[32]*Webb*, 655 P.2d at 468 (citing Meisleman, Attorney Malpractice: Law and Procedure § 3:5 at 44 (1980)); *see also Augustine v. Adams*, No. 95-2489-GTV, 1997 WL 298451 (D. Kan. May 2, 1997).

[33]*E.g.*, *Alires v. McGehee*, 85 P.3d 1191, 1195 (Kan. 2004); *Crandall v. Grbic*, 138 P.3d 365, 375 (Kan. Ct. App. 2006).

never presumed and must be established by clear and convincing evidence.[34]  Plaintiff has come forward with no evidence to support that defendant knowingly made an untrue statement of material fact with the intent to deceive.

Plaintiff argues that defendant committed fraud by advising him that he could not attach Cain's property until he had a "judgment" against her, knowing that there had already been a default judgment entered against her in February 1994.  Defendant admits in his brief that his statement in this August 1994 letter was misleading, but states in his affidavit that he only intended to convey that he could not attach Cain's property unless he could locate her to serve her with process.  There is no evidence to create a genuine issue of material fact over this issue.  Plaintiff has no evidence, aside from conclusory allegations, that defendant made the technically false statement with the intent to deceive plaintiff.  Plaintiff's fraud claim fails even if filed within the statute of limitations.

A motion for reconsideration under D. Kan. R. 7.3 is not encouraged.  The standards for these motions are well-established and are only appropriate when the Court has clearly misapprehended a party's position or fact or applicable law, or when new evidence is obtained that could not have been previously obtained through the exercise of reasonable diligence.  Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[35]  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the Tenth Circuit for motions for reconsideration.  Likewise, any response necessitated by a motion for

---

[34]*Crandall*, 138 P.3d at 375 (quoting *Alires*, 85 P.3d at 1195).

[35]*Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir. 1996), *cert. denied sub. nom. Miller v. Brown*, 520 U.S. 1181 (1997).

reconsideration is limited to three pages. No reply may be filed.

**IT IS THEREFORE ORDERED BY THE COURT THAT**: defendant Graham's Motion for Summary Judgment (Doc. 66) is **granted**.

**IT IS SO ORDERED**.

Dated this 23rd day of October 2006.

                                       S/ Julie A. Robinson
                                       Julie A. Robinson
                                       United States District Judge